## CHESTER *v.* PLAISTOW.

In a suit to recover of a town, chargeable for the support of a pauper, for supplies furnished him, proof that since the suit was commenced the plaintiff has claimed and received of the county pay for the same supplies, on the ground that the person was a county pauper, is not a legal defense.

Where a notice of sums expended for a pauper, by mistake, included some expenditures made before the ninety days next preceding its service, but the means of distinguishing what came before were given;—*held*, that such notice was not invalid where the mistake was not in bad faith.

Where the settlement of the pauper, in 1858, was in issue, it was held that the person under whom he claimed to derive his settlement must have gained a settlement under some law passed since December 31, 1795.

In assessing the damages to be awarded in such cases, a fair indemnity should be given the town, deducting whatever may have been contributed by the pauper, in labor or otherwise, for his own support.

THE writ is dated October 4, 1848, and the declaration is in assumpsit for the support of Philip Flanders, and Hannah, his wife, paupers alleged to have their settlement in Plaistow. The charge in the account annexed and referred to in the writ was,

" 1858, October 4. For board of Philip Flanders and Hannah Flanders, 25 weeks, at $2,                    $50.00
" Paid for clothing for same,                             3.25

                                                         ———
                                                         $53.25"

The notice, which was dated July 12, 1858, and was served on Plaistow July 22, 1858, stated the following claim :

" For board of said Philip and wife, 13 weeks,          $26.00
" Paid for clothing for same,                             3.25

                                                         ———
                                                         $29.25"

It was agreed that Chester, in November, 1858, made claim against the county of Rockingham for the support of Philip during the period embraced in the account annexed to the writ, and received

payment therefor from the county; and that the plaintiffs have authority in writing from the commissioners of the county, dated October 22, 1861, to recover and receive for the county in this suit the amount claimed therein for the board and clothing of Philip.

Upon the foregoing facts the defendants moved for a nonsuit. The writ and declaration, the notice, the application of the overseers of Chester to the county, and the authority from the commissioners, were parts of this case. If, under the foregoing circumstances, the court shall be of opinion that this action can not be maintained for the sums expended by the plaintiffs, as set forth in the declaration, although the settlement of the two paupers should be in Plaistow, then the plaintiffs are to become nonsuit.

In case the court shall be of opinion that this action can be maintained under the circumstances before stated, it is further agreed, for the purposes of this case only, that Philip has a derivative settlement from his father, David Flanders, Jr., having been born in Plaistow in 1801 while David, Jr., had a settlement there, gained under laws passed prior to January 1, 1796; unless he has lost such derivative settlement by reason of the statute, Rev. Stat., ch. 65, sec. 3.

It was also agreed, for the purposes of this case only, that Philip and Hannah were supported by the plaintiffs upon the town farm of Chester, and that their labor and services, rendered on said farm during the period they were so supported, were equal in value to the cost to the plaintiffs of supporting them there.

In case a nonsuit is not ordered, as herein before provided, it is agreed that judgment be rendered for the plaintiffs for the amount claimed in the writ, or for the defendants, as the opinion of the court shall be upon the foregoing case; provided, however, that, if a nonsuit is not entered as aforesaid, either party so electing may have the cause tried by the jury.

*C. H. Bell,* for the plaintiffs.

*Hills,* and *Tuck & French,* for the defendants.

BELLOWS, J.   The suit was brought October 4, 1858, to recover for the support of Philip Flanders, and Hannah, his wife, alleged to be chargeable as paupers to the town of Plaistow. In November 1858, the plaintiff made claim upon the county of Rockingham for the same support of the said Philip, upon the ground that he had no settlement in the State, and the claim was allowed and paid; and one question now is, whether such claim and payment can be set up as a defense to this suit upon the present state of the pleadings. As the matter has arisen since the commencement of the suit, it could not be pleaded in bar generally, but must be pleaded in bar of the further maintenance of the suit; or if after plea already pleaded, then it must be *puis darrein continuance.* 1 Chit. Pl. 657; *Tappan* v. *Jenness,* 21 N. H. 232. Unless, therefore, such plea has been filed, this defense could not be set up; but as this objection may be obviated by amendment, if such plea has

not already been pleaded, we will consider the question upon its merits.

In the first place we are of the opinion that the suit can not be prosecuted for the benefit of the county, upon the ground that the county has paid a claim for which the town was originally liable. When a surety pays the debt of a principal, he is entitled to be subrogated to all the securities which the creditor holds against the principal; including such as he may have acquired by attachment, or by levy of execution; and to make such securities available, upon being assigned to the surety, he may prosecute such suit for his benefit; and the payment under those circumstances will not be an absolute discharge of the claim, but it will be upheld so far as is necessary to support such securities. *Edgerly* v. *Emerson*, 23 N. H. 555; *Brown* v. *Franklin Mills*, 42 N. H. 292. But this principle is deduced from the relation between the surety and the creditor, and the interest of the former in the securities held by the latter; and it does not apply where a debt is paid by one of several joint debtors, or by a third person, not having the relation of surety or guarantor. *Edgerly* v. *Emerson*, 23 N. H. 560; 24 Greenl. Ev. 518, n. 3. In the case before us, there was no privity between the county and the town, and if the payment by the county could have any effect, it would be to discharge absolutely the claim. *Edgerly* v. *Emerson*, and cases cited. The claim here was allowed and paid by the county, not in behalf of the town of Plaistow, or at its request, but as a debt due from the county itself; and should it prove to have been improvidently paid, we know of no rule of law that would give to the county a remedy in the name of Chester against the town of Plaistow. In such a case the remedy would seem to be against Chester, to compel it to refund the money which was paid under a mistake of the facts.

But we are also of the opinion that the payment by the county of the claim made against it for the support of Philip Flanders, can in no legal sense be regarded as a payment of the debt of Plaistow; for nothing was paid for Plaistow, or at its request; but whatever was paid, was paid as the debt of the county. Had the county assumed to act for Plaistow at the time of payment, a subsequent ratification would have been available; but nothing of that kind appears, and the defendant can offer the fact in evidence, if at all, only for its bearing upon the issue, whether the pauper had his settlement in Plaistow or not.

The case of *Peterborough* v. *Lancaster*, 14 N. H. 382, takes a different view of the question; but the subject does not seem to have been much discussed, nor is any principle stated, or authority cited, upon which the decision is placed. *South-Hampton* v. *Hampton-Falls*, 11 N. H. 134, is not in point. There the county was ultimately liable for the expenses, although in the first instance Hampton-Falls was bound to pay them; and it well might be held that under such circumstances the payment by the county extinguished the debt. But the case before us is very different, as there was no such relation, or any privity whatever between the defendant town and the county; but in principle it is much like the cases of

*Allen* v. *Holden,* 9 Mass. 134; *Cheever* v. *Merrick,* 2 N. H. 376. In the former case, a sheriff was sued for some default in respect to an execution committed to him, and afterward he paid the whole amount to the creditor, who thereupon assigned to him the judgment. In a suit brought afterward on this judgment, the court held that although the creditor had received the amount of his debt, the debtor had paid nothing, and could not avail himself of the payment by the sheriff; and they say whether a sheriff might have some remedy against the creditor who should thus obtain payment of the debtor, it is not necessary to inquire in that case. The doctrine of this case is also recognized in *Cheever* v. *Merrick,* where the sheriff had given his note for the amount of the judgment; and by agreement with the creditor, an alias execution was issued and levied upon the debtor's property, for the officer's benefit. These cases go upon the principle that a payment by a third person, not in privity with the debtor, and not for him, or at his request, will not discharge the debt, even although that third person be a sheriff who pays on account of his default in respect to the same debt; and the same principle applies to the case before us. See, also, *Breck* v. *Blanchard,* 22 N. H. 303.

It is also objected that the notice of the sums expended was invalid, because it included in a gross sum expenditures made both within and beyond the ninety days for which a recovery could be had, without any means of distinguishing between them. The notice was served July 22, 1858, and by law was good for all sums expended within ninety days previous to that time. The date of the notice was, however, July 12, 1858, and was for the board of said Philip and wife, 13 weeks,        $26.00

Paid for clothing for same,                    3.25

                               $29.25

The fair construction of this notice is a claim for thirteen weeks' board of the two paupers, next preceding its date, at two dollars per week; a part of it being for expenditures made more than ninety days before the service of the notice. But we think that the means of distinguishing what comes within the ninety days is furnished, and that the notice is not therefore bad on that ground.

It is well settled that a notice is not necessarily bad because the charges in it are unreasonably high; but if made so by mistake merely, and in good faith, and not for purposes of fraud or imposition, the town may, nevertheless, recover a reasonable amount. *Barnstead* v. *Strafford,* 8 N. H. 142; *Berlin* v. *Gorham,* 34 N. H. 277. It follows of course that it is not essential to the validity of the notice that it should state the exact sum that may be found to be due; but if made in good faith, it will uphold the recovery of what is proved to be just and reasonable; and so are the cases of *Meredith* v. *Canterbury,* 5 N. H. 80; *New-Boston* v. *Dunbarton,* 12 N. H. 409; *Dalton* v. *Bethlehem,* 20 N. H. 512.

In the case before us there is no reason to infer the existence of bad faith in making the notice; but it seems to have been a mis-

take caused by a wrong computation of time, and delay in the service of the notice, which may often occur; and, therefore, as the means of distinguishing what comes before from what is within the ninety days, are given with reasonable certainty, so that the defendant town was not likely to be misled; we hold the notice to be valid. It is said, also, that the charge for clothing is imperfect for want of a date, but we think that it may well be regarded as of the date of the notice, July 12, 1858.

In respect to the amount which the plaintiff might be entitled to recover, we are of opinion that it must be the amount reasonably expended for the pauper, deducting the actual value of his services rendered to the town. It is true that the relief is to be regarded as a public charity; that the town is entitled to the services of the pauper while he is maintained by it; and there is no implied promise to pay for those services, or any part of them, although they may exceed in value the amount expended for such support. Yet we think the town can justly claim of the party ultimately liable, only a fair indemnity for what such support has cost, after deducting the value of what the pauper has contributed toward his own support. In no just sense can the amount expended for the support of the pauper be regarded as including the sums refunded by him in money or services. Where the town furnishes but a part, and the pauper himself the residue, there surely could be no propriety in claiming the whole, of the party ultimately liable, and it could make no difference in effect that the part furnished by the pauper first went into the hands of the town, and was then paid out for his support. The sum really expended by the town is that which it has paid, or assumed to pay, of its own funds, and not including what is furnished by the pauper himself, in services or money, both of which must stand on the same ground.

Another question to be determined is, whether Philip Flanders, the husband, had a settlement in Plaistow when the relief was furnished. If he had, it was, as the case finds, derivative from his father, David Flanders, Jr., who had gained a settlement there under laws passed prior to January 1, 1796, the son Philip having been born in Plaistow in 1801. And this involves the construction of chapter 65 of the Revised Statutes, which is a revision of the law of July 3, 1841. By that law it is provided that no town shall be liable for the support of any person, "unless such person has gained a settlement in such town or place, in his or her own right, under or by virtue of some act of the legislature passed since the 31st day of December, A. D. 1795, or unless such person has a settlement in some town or place in this State, by deriving the same directly or through one or more persons, from another, who has gained the same under or by virtue of some act passed since that day."

The language of the Revised Statutes (ch. 65, sec. 3) is, that "no town shall be liable for the support of any person, unless he, or the person under whom he derives his settlement, shall have gained a settlement therein under some law passed since the 31st day of December, A. D. 1795." In *Pittsfield* v. *Barnstead*, 38 N. H. 115, it is

held that this is a substantial reënactment of the law of 1841, and in that we fully concur.   And it is also there decided that the effect of this legislation was to abolish all settlements gained under laws passed prior to January 1, 1796, and the consequences of such settlements, so far as concerned the liability of towns for the support of paupers; and it was, therefore, held, that a settlement by birth in 1811, derived from one who had acquired a settlement before 1796, was abolished by the laws of 1841.   Such, also, is the doctrine of *Gilford* v. *Gilmanton*, 20 N. H. 456, and *Andover* v. *Merrimack County*, 37 N. H. 437; and the same views are apparently entertained in *Gilford's Petition*, 20 N. H. 278.

On the other hand, it is held in *Merrimack* v. *Hillsborough*, 19 N. H. 550, that a child born in 1807 would take the settlement of its father, although that was derived from one who acquired a settlement prior to 1796; holding that as the law which gave legitimate children the settlement of their father was passed January 1, 1796, the child's settlement was gained under a law passed since December 31, 1795.   If this doctrine were recognized as a sound construction of the law of 1841, then it is quite apparent that that law would have no effect whatever upon derivative settlements, inasmuch as all such settlements were regulated by laws passed after December 31, 1795, it being provided by the law of January 1, 1796, that settlements should thereafter be gained in the modes pointed out in that law, and not otherwise; and provision is there made for the settlement of married women, and legitimate and illegitimate children.   But it is equally apparent that the law of July 3, 1841, does undertake to abolish all settlements derived from others who have not gained their settlements under laws passed since December 31, 1795.   This indeed is expressly declared by the act, and yet, if the doctrine of *Merrimack* v. *Hillsborough* is correct, this provision of the law would be wholly inoperative; because, on that assumption, all settlements by derivation, gained after December 31, 1795, would stand upon the footing of original settlements gained by the party himself, and under subsequent laws.   But it is obvious that the court must have overlooked the provision that no town shall be liable, in the case of derivative settlements, unless the person under whom the settlement is derived shall himself have gained a settlement under some law passed since December 31, 1795.

In the case before us, the person from whom the settlement is claimed to be derived had gained no settlement since December 31, 1795, and we are satisfied that it comes within the provisions of the Revised Statutes (ch. 65, sec. 3).   The other construction would require a full investigation of the facts proving the settlement of the father under laws passed prior to January 1, 1796, including, perhaps, the validity or the fact of warning out, and other matters connected with the question of an ancient settlement; and we think that one of the most important features in the policy of the law of 1841 was to avoid just such expensive and often-times unsatisfactory investigations, and the same policy, we think, dictated the law of July 4, 1861.

It is said by the plaintiff's counsel that this is not a derivative

settlement, but an original one, and "gained" under laws passed since December 31, 1795, and he relies upon the use' of that word "gained," in connection with such settlements. But it is sufficient to say that there are clearly such things as derivative settlements, and that they are distinctly recognized in our legislation, and in the law of 1841, and unless the one in question is regarded as of that class, no others can be.

The result is, that the motion for nonsuit must be denied, but the defendant is entitled to judgment on the ground that the paupers were not chargeable to Plaistow, unless the plaintiff elect a trial by jury.